WRIGHT, Presiding Judge.
This is an appeal by the Alabama Department of Mental Health and Mental Retardation (Mental Health) from a decree of the District Court of Houston County, Juvenile Division, committing Daniel Corey Am-mons, age seven, to its custody, pursuant to § 12-15-90, Code of Alabama 1975.
The record indicates that Daniel suffers from a genetic abnormality known as 4-P Trisomy. This abnormality has manifested itself in several ways. Daniel is profoundly mentally retarded. It is not disputed that the level of mental retardation is more than borderline or mild. Daniel also suffers from a number of medical disorders, including: a congenital heart defect, orthopedic problems with his feet and lower extremities, and respiratory problems such as asthma, wheezing and allergies which have left him highly susceptible to pneumonia. Also, he has had occasional gastroenteritis with symptoms of vomiting and dehydration or vomiting and diarrhea.
In April 1985, upon professional advice, Daniel’s parents filed a petition in the juvenile court asking that he be committed to the custody of Mental Health. Notice of this petition, pursuant to § 12-15-90(d)(3), Code 1975, was given to Mental Health. In response to this notice, Mental Health alleged that it did not have available an ade *614 quate facility to care for Daniel. Further, it alleged that acceptance of Daniel in any of its facilities would create an overcrowded condition. After an ore tenus hearing on the petition, the juvenile court entered a decree committing Daniel to the custody of Mental Health. The order specified that Mental Health’s J.S. Tarwater facility was adequate to meet Daniel’s needs. Further, the juvenile court found that Daniel’s acceptance into this facility would not create an overcrowded condition. Daniel is currently residing at the Tarwater facility in what is known as respite care.
On appeal, Mental Health does not dispute that the evidence clearly shows that Daniel is mentally retarded; that this is more than a borderline or mild level of mental retardation; and that, if he is allowed to remain in the community, Daniel is likely to cause serious injury to himself or others. Instead, it argues that even though all of the requirements of § 12-15-90(j) were met, committing Daniel to its custody, on the facts of this particular case, is prohibited by § 12-15-90(d)(3). It is its assertion, that the determinative issue in this case is: whether the juvenile court can commit a child to its custody if there are not adequate facilities available or acceptance into a facility would result in an overcrowded condition. We find it unnecessary to address that specific issue on the facts of this case. It is our considered opinion that before such issue may be addressed, it must appear that in fact there is no adequate and uncrowded facility available. The mere administrative statement by Mental Health, if properly challenged before the court, is insufficient. It becomes a question of fact, and is to be decided by the court from the evidence.
Findings of fact made by a trial court, upon ore tenus evidence, are presumed correct and will not be disturbed on appeal if supported by the evidence or any reasonable inferences therefrom. Participating Parts Associates, Inc. v. Pylant, 460 So.2d 1299 (Ala.Civ.App.1984); Jackson v. Jackson, 449 So.2d 242 (Ala.Civ.App.1984). We find the juvenile court’s determination that the J.S. Tarwater facility is an adequate facility for Daniel and that his acceptance to this facility will not create an overcrowded condition to be supported by the evidence.
The only testimony offered by Mental Health in support of its allegation of inadequate facilities and overcrowding came primarily from three witnesses: Mrs. Catherine Maddox, the director of the J.S. Tarwa-ter Development Center; Dr. Rod Mracek, a physician and consultant to the center; and Dr. Larry Latham, employed by Mental Health as an associate commissioner for mental retardation. This testimony was far from conclusive on the issues.
It appears that the only reason Mental Health stated that it did not have an adequate facility to meet Daniel’s needs was because his medical problems were too severe. Dr. Latham, upon questioning by the court, stated that the Tarwater Development Center would have no problem in providing the habilitation training necessary for Daniel’s care. Indeed, he agreed that if it were not for the medical problems, Tarwater would be the correct and adequate placement for Daniel. This opinion was apparently shared by Mrs. Maddox, who seemed most concerned with Daniel’s alleged need for what she termed “skilled nursing care.” However, this concern for Daniel’s medical problems found little support in the testimony of either Dr. Stanley Forston, Jr., Daniel’s pediatrician, or Dr. Mracek.
Although Dr. Mracek first testified that in his opinion Daniel needed skilled nursing care which could not be provided at Tarwa-ter, he later backed away from this position. He admitted that, of the criteria that make up what he thinks of as skilled nursing care, Daniel was, at the present time, in need of only one: close observation for the development of medical problems. Further, he opined that this care could be provided in the home if Daniel were not so mentally retarded. Indeed, he explained that this type of medical observation had been adequately supplied by Daniel's mother during the first five to six years of his *615 life. As he described it, “she did a splendid job.” Daniel’s mother is neither a doctor nor a registered nurse with skilled training. Further detracting from his opinion that Daniel could not receive adequate medical attention at Tarwater was his observation that, up to the time of the hearing, Daniel’s needs had been adequately met at Tarwa-ter.
Dr. Forston, who has provided for Daniel’s medical needs since his birth, testified that although many of these medical problems were very severe, they have gradually started to level off, and his overall medical condition has improved. In his opinion, Daniel needs only routine medical care, not the continuous type of skilled nursing care provided by a nursing home or hospital. He need only have someone around who can recognize that a medical problem is developing. The symptoms would not be so subtle as to require skilled medical observation. Indeed, he explained that if it were not for Daniel’s mental retardation and behavioral problems, Daniel would not require institutional care; his mother could provide the medical observation needed.
In light of the testimony by these medical experts that Daniel’s primary medical need is only one of observation, and the testimony that this need can be met by one that is not a skilled medical person, as well as the fact that his need was currently being met at the Tarwater facility, we cannot say that the decision of the juvenile court finding Tarwater to be an adequate facility in which to place Daniel was plainly and palpably erroneous.
Our review of the record indicates that there was little if any testimony given in support of Mental Health’s contention that acceptance of Daniel into the Tarwater facility would create an overcrowded condition. In fact, the evidence was largely to the contrary. During Daniel’s stay at Tar-water, according to the testimony of its administration, none of its employees have been required to work overtime. The fourteen registered nurses, one licensed practical nurse, and 160 mental health workers have adequately met the needs of both Daniel and the approximately 222 other residents at Tarwater. No patient has suffered any neglect because of Daniel’s presence at the facility. Further, there was testimony that, in meeting Daniel’s needs, money was no problem. Apparently, Mental Health’s actual argument is not that acceptance of Daniel into Tarwater would create an overcrowded condition at the facility; instead, it is simply that he should not be admitted because he needs skilled nursing care and because Mental Health has not developed, up to now, a habilitation program for children under eight years of age. Though at least one patient was discharged from the facility after Daniel’s petition was filed, he was not considered for the vacancy. Further mitigating against Mental Health’s contention, the testimony indicated that it had been possible in the recent past to open up additional beds when the need arose. No effort was made in this direction on Daniel’s behalf.
In light of the evidence, we are of the opinion that the juvenile court’s decision is supported by the evidence. It is affirmed.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.